UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RONALD ARMBRUST,

    Plaintiff,

v.                                           Case No: 2:14-cv-55-FtM-38CM

SA-ENC OPERATOR HOLDINGS, LLC,

    Defendant.
_____/

# ORDER[1]

This matter comes before the Court on the Defendant, SA-ENC Operator Holdings, LLC's (Citrus Gardens) Motion for Summary Judgment (Doc. #29) filed on March 6, 2015. The Plaintiff, Ronald Armbrust filed his Response in Opposition (Doc. #35) on March 30, 2015. SA-ENC, with leave of court, filed a Reply Brief (Doc. #41) to Armbrust Response in Opposition on April 14, 2015. The Motion is now fully briefed and ripe for the Court's review.

# FACTS

Plaintiff, Ronald Armbrust, was originally hired by Citrus Gardens as the Staff Developer (Doc. #30-1, 19:18-25). The Staff Developer provides education for licensed and non-licensed staff, orientation, and monitors infection control. (Doc. #30-1, 20:3-5).

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

Plaintiff applied for and was promoted to be Director of Nursing (DON) at Citrus Gardens effective May 13, 2013. (Doc. #30-1, 35:21-25).

In early September 2013, Armbrust began to experience pain in his abdominal area.  Armbrust stated these symptoms were similar to symptoms he had previously experienced in 2010 which resulted in an earlier abdominal surgery. In late September 2013, Plaintiff spoke with Defendant's Citrus Gardens, human resources clerk, Lenora Aimes-Salmon, regarding his symptoms, possible need for medical leave and his FMLA rights and eligibility. (Doc. #30-21, 11:25; 12:1-6; Doc. #38, ¶ 5).  At that time, Armbrust had not been employed for one year, so he would not have been eligible until his one-year anniversary on October 16, 2013. (Doc. #30-21,11:25; 12:1-6; Doc. #38, ¶ 5). Plaintiff informed Aimes-Salmon that he intended to formally request FMLA leave once he became eligible to do so. (Doc. #38, ¶ 5).

On October 2, 2013, Armbrust met with his supervisor Susie Jensvold, a nurse consultant, with Citrus Gardens.  Jensvold testified at her deposition that Armbrust informed her that his blood pressure and health was being affected by his responsibilities as Citrus Gardens' DON. (Doc. #30-18, 7:7-11).  Jensvold testified that she asked Armbrust if he wanted to continue as DON or if he wanted to consider other options available to him while still remaining employed at Citrus Gardens. (Doc. #30-18,10:13-21).  Jensvold testified that Armbrust called her the next day October 3, 2013, and informed her he wanted to step down as DON. (Doc. #30-18, 11:24-25, 12:1-4).  Jensvold continued that she received a call later that same day from Terry Hanson, the outgoing administrator for Citrus Gardens, informing her that Armbrust wanted to step down as DON. (Doc. #30-18, 12:6- 13:14).  Armbrust disputes Jensvold and Hanson's testimony

2

stating that he never told anyone at Citrus Gardens that he wanted to step down from his position as DON. (Doc. #31-1, 116:16-118:19).

On October 8, 2013, Armbrust informed Jensvold that he was experiencing very similar symptoms to the 2010 abdominal issue, and that if the symptoms continued he would need to seek medical treatment which may require an extended period of medical leave. (Doc. #38, ¶4). Also on October 8, 2013, Plaintiff informed Ms. Jensvold, that he would need surgery on October 18, 2013, and would be taking FMLA leave as soon as he became eligible. (Doc. #38, ¶¶ 6-7). On the morning of October 10, 2013, Plaintiff spoke with Ms. Aimes-Salmon in the Human Resources office at Citrus Gardens. Aimes-Salmon said she would prepare the FMLA paperwork and make arrangements for Plaintiff to sign it by the end of business on October 16, 2013. (Doc. #38, ¶ 8).

On October 14, 2013, Citrus Gardens made an offer to Phyllis Russ to become DON beginning on November 11, 2013. ([Doc. #30-15](), 63:10-13). In the mean-time, Armbrust met with Aimes-Salmon on October 16, 2013, to request and sign the necessary paperwork to take FMLA leave. Armbrust says that the FMLA forms had his prior position as Staff Developer listed on the FMLA application. ([Doc. #30-2](), 53:17-25, 55:2-16). He directed Aimes-Salmon to change his title to DON. ([Doc. #30-21](), 10:3-25, 11:1-17). Aimes-Salmon complied with Armbrust request and changed his title on the FMLA paper work to DON. Armbrust began his FMLA leave on October 18, 2013.

On November 11, 2013, while Plaintiff was on FMLA leave, Russ commenced her employment with Citrus Gardens as permanent DON. (Doc. #31-1, 63:14-22). The new administrator, Mike Ward, also stated that when he met with Armbrust on December 6, 2013, that Armbrust said he was looking forward to resuming his position as Staff

3

Developer. Nevertheless, on December 12, 2013, Armbrust sent a letter and medical release to Ward notifying him that he intended to return to work in his position as DON on January 13, 2014. (Doc. #30-10, p.333).

Ward testified that he called Armbrust two (2) times during the week of January 6, 2014, to arrange Armbrust's return to work. Ward stated that each time he left a message informing Armbrust that he was to report back to work on January 13, 2014, at 10:00am. Armbrust did not return Ward's calls. (Doc. #30-11, 39:8-25). On January 10, 2014, Ward spoke with Armbrust about his return date. Armbrust informed Ward that his grandmother had passed away and that he could not return to work on January 13, 2014, but would need additional time. (Doc. #30-11, 39:23-40:2). Armbrust's grandmother passed away on Sunday, January 5, 2014. (Doc. #31-1, 112:23-25). Armbrust testified that he called in to Citrus Gardens on January 5, 2014, to inform them that his grandmother had died. (Doc. #30-3, 111:10-112:1-9). Her funeral was Friday, January 10, 2013.

Citrus Gardens' bereavement policy allows for three consecutive days off with pay to be used during the period between the day of death and the day following the burial of an immediate family member. (Doc. #30-16, 94:13-95:12). Armbrust requested an additional three (3) days from January 13, 2014, through January 15, 2014, before returning to work on January 16, 2014. (Doc. #30-2, 96:6-19, #30-3, 141:2-14).

Ward told Armbrust when he spoke to him that he would inform the corporate office of Armbrust's request but states he never approved the bereavement leave from January 13, 2014, to January 16, 2014. (Doc. #30-12, 80:7-15). Armbrust did not return to work on Monday, January 13, 2014. A letter was sent to Armbrust on January 14, 2014, notifying him that he was terminated from his employment with Citrus Gardens for

failure to return to work on January 13, 2014, and because of the alleged credibility questions raised as a result of Plaintiff's demand to return to the DON position even though staff members at Citrus Gardens allege he wanted to return to the Staff Developer position. (Doc. #37-12, p. 5).  Armbrust subsequently brought the instant law suit against Citrus Gardens alleging:  (1) interference with his FMLA rights, and (2) retaliation for taking FMLA leave.

## STANDARD OF REVIEW

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  An issue is genuine if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 U.S. 2505, 91 L. Ed. 2d 202 (1986).  Similarly, an issue is material if it may affect the outcome of the suit under governing law. Id.

The moving party bears the burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  In deciding whether the moving party has met this initial burden, the Court must review the record and all reasonable inferences drawn from the record in the light most favorable to the non-moving party. Whatley v. CNA Ins. Co., 189 F.3d 1310, 1313 (11th Cir. 1999).  Once the Court determines that the moving party has met its burden, the burden shifts and the non-moving party must present specific facts showing that there is a genuine issue for trial that precludes summary judgment. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "The evidence presented cannot consist of conclusory allegations, legal conclusions or

5

evidence which would be inadmissible at trial." Demyan v. Sun Life Assurance Co. of Canada, 148 F. Supp. 2d 1316, 1320 (S.D. Fla. 2001) (citing Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991)). Failure to show sufficient evidence of any essential element is fatal to the claim and the Court should grant the summary judgment. Celotex, 477 U.S. at 322-323. Conversely, if reasonable minds could find a genuine issue of material fact then summary judgment should be denied. Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1532 (11th Cir. 1992).

## DISCUSSION

Among the substantive rights granted by the FMLA to eligible employees are the right to "[twelve] 12 work weeks of leave during any [twelve] 12–month period .... [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee," 29 U.S.C. § 2612(a)(1), and the right following leave "to be restored by the employer to the position of employment held by the employee when the leave commenced" or to an equivalent position, 29 U.S.C. § 2614(a)(1). To preserve the availability of these rights, and to enforce them, the FMLA creates two types of claims: interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, *see* 29 U.S.C. § 2615(a)(1), and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act, *see* 29 U.S.C. § 2615(a)(1) & (2); 29 C.F.R. § 825.220(c) ("An employer is prohibited from discriminating against employees ... who have used FMLA leave."). To state a claim of interference with a substantive right, an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied. Strickland v. Water Works and Sewer

Bd. of City of Birmingham, 239 F.3d 1199, 1206 -1207 (11th Cir. 2001) (citing O'Connor v. PCA Family Health Plan, Inc., 200 F.3d 1349, 1353–54 (11th Cir.2000)); King v. Preferred Technical Group, 166 F.3d 887, 891 (7th Cir.1999). In contrast, to succeed on a retaliation claim, an employee must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right. Strickland, 239 F.3d at 1206 -07; King, 166 F.3d at 891. In other words, a plaintiff bringing a retaliation claim faces the increased burden of showing that his employer's actions "were motivated by an impermissible retaliatory or discriminatory animus." Strickland, 239 F.3d at 1206 -07.

Armbrust's Complaint states two (2) counts against Citrus Garden. Count I alleges Citrus Gardens interfered with his rights under the FMLA and Count II states Citrus Gardens retaliated against him for taking leave time under the FMLA. Citrus Gardens argues summary judgment is proper as to Count I because the Plaintiff did not return to work at the end of the twelve (12) week FMLA leave period. Citrus Gardens states summary judgment must be granted as to Count II because Armbrust cannot establish a *prima facie* case of retaliation or if he can then it had legitimate reasons for terminating his employment.

### (1) Count I Interference

Armbrust claims that Citrus Gardens refusal to return him to his position as DON upon his return from FMLA leave constitutes unlawful interference with his FMLA rights. According to the Eleventh Circuit, "[t]o state a claim of interference with a substantive right, an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied." Strickland, 239 F.3d at 1206–07. "Alternatively, an

employee may demonstrate that the employer interfered with the FMLA benefit." Penaloza v. Target Corp., 2012 WL 6721011, *13 (M.D. Fla. December 27, 2012) *aff'd* 549 Fed. Appx. 844 (11th Cir. 2013); Lowery v. Strength, 356 F. App'x. 332, 334 (11th Cir.2009)). Although a retaliation claim requires the plaintiff to show that the employer's actions "were motivated by an impermissible retaliatory or discriminatory animus," the employer's intent is immaterial in an interference claim. Penaloza, 2012 WL 6721011, at *13 (citing Strickland, 239 F.3d at 1207).

Citrus Gardens states it did not interfere with Armbrust's FMLA rights by not reinstating him to his position as DON at the end of his FMLA leave time, because Armbrust did not return to his employment when his leave expired. According to Citrus Gardens, Armbrust's FMLA leave expired on January 9, 2014, however, it is undisputed that Armbrust received permission to return to work on January 13, 2014. Citrus Gardens argues that when Armbrust failed to return on January 10, 2014, he waived his right to reinstatement because the time from January 10, 2014, up to January 13, 2014, was not FMLA leave time but voluntary time given by Citrus Gardens—time not covered by the FMLA.

While Citrus Gardens maintains that Armbrust was scheduled to return on January 13, 2014, Armbrust states his return date was scheduled to be January 16, 2014. Armbrust bases his return date on the conversation he had with Ward on January 10, 2014. On January 10, 2014, Armbrust requested an additional three (3) days from January 13, 2014, through January 15, 2014, before returning to work on January 16, 2014, due to the death of his grandmother which occurred on January 5, 2014.

Employers may choose to give their employees more leave time than the FMLA mandates, but as the Eleventh Circuit has found that "[t]he statute does not suggest that the 12 week *entitlement* may be extended." McGregor v. Autozone, Inc., 180 F.3d 1305, 1308 (11th Cir.1999)(emphasis added);

While Armbrust argues that he was denied his right to reinstatement under the FMLA to his prior position or its equivalent, he was given the full twelve (12) weeks of FMLA leave which expired on January 9, 2014.  Whether Armbrust was scheduled to return to work on the January 13, 2014, or January 16, 2014, is irrelevant to his interference claim, because it is undisputed that he was given the full twelve (12) weeks under the FMLA and his termination occurred after his FMLA leave expired. Bender v. City of Clearwater, 2006 WL 1046944, *11 (M.D. Fla. Apr.9, 2006) ("As long as the employee has been given the requisite leave period, the statute does not forbid an employer from discharging an employee who fails to come back to work at the expiration of the leave. An employee's insistence on taking more leave than is allowed by the FMLA is not protected conduct.") (internal citations omitted).

Armbrust cannot prove that he was denied any benefit to which he was entitled under the FMLA. Penaloza, 2012 WL 6721011, at *14.  As such, the Motion for Summary Judgment in regards to Count I Interference is due to be granted.

### *Count II Retaliation*

Citrus Gardens argues that summary judgment should be granted because the Plaintiff cannot prove retaliation under the FMLA.  Armbrust argues that he met all of the elements necessary to establish a *prima facie* case of retaliation pursuant to the FMLA.

"Demonstrating a *prima facie* case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." Jirau v. Camden Development, Inc., 2011 WL 4529983, *4 (M.D. Fla. September 30, 2011) (citing Brammer v. Winter, 2007 WL 4365643, *3 (M.D. Fla. December 12, 2007) (quoting Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir.1997)). A *prima facie* case of retaliation under the FMLA requires a showing that (1) the employee engaged in statutorily protected conduct, (2) the employee suffered an adverse employment action, and (3) there is a causal connection between the two. Krutzig v. Pulte Home Corp., 602 F.3d 1231, 1234 (11th Cir.2010). "This can be shown through either direct or indirect evidence, the latter of which requires applying the burden-shifting framework" of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973). Connor v. Sun Trust Bank, 546 F.Supp.2d 1360, 1372 (N.D.Ga.2008).

In this instance, Armbrust does not argue that he has direct evidence of discrimination against him. Instead he relies on the burden-shifting framework found the Supreme Court's decision in McDonnell Douglas. "Under that framework, the plaintiff has the initial burden of establishing a *prima facie* case of discrimination." Jirau, 2011 WL 4529983, at *4 (citing Combs v. Plantation Patterns, 106 F.3d 1519, 1527–28 (11th Cir.1997)). The burden then shifts to the defendant, who must articulate a legitimate and non-discriminatory reason for its action. Jirau, 2011 WL 4529983, at *4. If the defendant satisfies its burden of production, the burden shifts back to the plaintiff, who must then prove that the defendant's reason is a pretext for discrimination. Id.

(1) <u>Prima Facie Showing</u>

(a) <u>Whether Armbrust Engaged in Statutorily Protected Conduct</u>

Armbrust argues he engaged in statutorily protected conduct by taking FMLA leave for a serious medical condition and by expressly asserting his right to reinstatement as DON in his December 12, 2014 letter to Citrus Gardens.  It is undisputed that Armbrust qualified for FMLA as of October 18, 2013, and that he began his leave on that date.  Thus, Armbrust has established that he engaged in protected activity.

*(b)Whether Armbrust Suffered an Adverse Employment Action*

Armbrust suffered an adverse employment action when he was terminated from his position as at Citrus Gardens on January 14, 2014.

*(c)Whether There was a Causal Connection*

Armbrust alleges that Citrus Gardens terminated his employment because he availed himself of a protected right under the FMLA.  Citrus Gardens argues that Armbrust cannot prove causation because the time he applied for FMLA leave October 16, 2013, and the time he was terminated January 14, 2014, was over three (3) months.  As such, Citrus Gardens contends that the temporal proximity from the alleged protected conduct, taking FMLA leave on October 18, 2013, and his termination on January 14, 2014, was too far removed in time to establish causation. Penaloza v. Target Corporation, 2012 WL 6721011, at *14 (finding the Eleventh Circuit has held that without additional evidence, an adverse employment action taken three months after protected activity is not sufficiently proximate to show causation).

A review of the facts shows that Armbrust originally informed Citrus Gardens that he was considering taking FMLA leave as early as September 2013.   Citrus Gardens

begin the process of replacing Armbrust as DON in early October 2013. Armbrust's replacement was hired on November 11, 2013, while Armbrust was still on FMLA leave, only a few weeks after he began his leave under the FMLA on October 18, 2013. Citrus Gardens' action would therefore, prevent Armbrust from being reinstated.

Armbrust testified that he never told any of the staff members or supervisors at Citrus Gardens he wanted to return to his previous position as Staff Developer rather than as DON. In fact on December 12, 2013, Armbrust sent a letter to Ward, Citrus Garden's administrator, stating that he wanted to return to his position as DON upon the completion of his FMLA leave. As part of its rationale for terminating Armbrust, Citrus Gardens cited to his December 12, 2013 letter stating that he wanted to return to his position as DON after his FMLA leave expired because it contradicted his earlier statements that he wanted to step down as DON. His termination occurred within a few days of the expiration of his FMLA leave.

Looking at the facts in the light most favorable to the nonmoving party, Citrus Gardens had advanced notice of Armbrust's intention to take FMLA leave and began to seek a replacement for the DON position. Citrus Gardens took action to replace Armbrust while he was out on FMLA leave and terminated his employment within a few days of same. Armbrust has set forth facts sufficient to permit an inference of causation connecting his termination and his FMLA leave. *See* Brammer, 2007 WL 4365643, at *3 (the burden to establish a *prima facie* case is not onerous it only requires that the plaintiff present evidence of an inference of discrimination and must rely on circumstantial evidence to establish retaliation). Thus, Armbrust has set forth a *prima facie* case that Citrus Gardens retaliated against him for taking FMLA leave.

### *(2) Whether there were Legitimate Reasons for Armburst's Termination*

Citrus Gardens argues that it had a legitimate reasons to terminate Armbrust from his employment. Citrus Gardens contends Armbrust was terminated because: (1) he failed to return to work on January 13, 2014, as previously agreed, and (2) he insisted returning to work as DON—a position from which he had resigned and for which Citrus Gardens had hired a replacement prior to Plaintiff's FMLA leave—creating concerns for Citrus Gardens regarding his credibility. Terminating an individual's employment for failing to return to work as agreed after an extended medical leave and for credibility issues are both legitimate reasons to fire someone. Having found that Citrus Gardens reasons for terminating Armbrust are legitimate, the Court must now look to see if those reasons were merely a pretext.

### *(3) Pretext*

Armbrust argues that Citrus Gardens' reasons for terminating him were a pretext for his taking FMLA leave. If the employer presents legitimate reasons for an employee's termination, the employee must then show that the employer's proffered reason was pretextual by presenting evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." Cooper v. Gulfcoast Jewish Family Services, Inc., 2010 WL 2136505, *8 (M.D. Fla. May 27, 2010) (*quoting* Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir.2000)). To show pretext, the employee may rely on evidence that he already produced to establish his *prima facie* case. Cooper, 2010 WL 2136505, at *8.

Citrus Gardens contends that Armbrust cannot demonstrate pretext by arguing he was approved for bereavement leave up to January 16, 2014. Citrus Gardens states that

13

Armbrust knew he was to return on January 13, 2014. (Doc. #30, Ex. B, 65:5-66:21, Ex. C, 89:1-10). Citrus Gardens' HR representative, Kristin Skolnik, states that the bereavement leave was never approved nor properly requested, and therefore, Armbrust was terminated for not returning to work on January 13, 2014, as agreed. (Doc. #30, Ex. C, 89:6-10).

Contrary to Citrus Gardens' position, Armbrust argues that Ward approved his return date for January 16, 2014, when they spoke on the phone on January 10, 2014. (Doc. #30, Ex. B, 70:18-21). Armbrust was terminated on January 14, 2014 for failure to report for work after his FMLA leave ended, however, Ward and Skolnik acknowledge that they never informed Armbrust that his bereavement leave was not approved. (Doc. #30, Ex. C, 79:3-14).

Citrus Gardens further argues that Armbrust was terminated because he had a credibility problem. As noted above, Citrus Gardens states that Armbrust stepped down as DON but then later claimed he did not. Contrary to Citrus Garden's position, Armbrust argues that he never informed anyone at Citrus Gardens that he was stepping down as DON. In fact, Armbrust had Skolnik list his position as DON on his FMLA leave application forms and wrote a letter on December 12, 2013, stating he would return to his position as DON when his leave was up.

The date of return and the position to which Armbrust would return create genuine issues of material fact that go directly to the pretext argument. Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Therefore, the Motion for Summary Judgment as to Count II is due to be denied.

*Equitable Estoppel*

Armbrust argues that Citrus Gardens should be equitably estopped from denying his reinstatement on the grounds that his FMLA leave had expired on January 9, 2014. Although most of the other Circuit Courts apply the equitable estoppel doctrine to the FMLA, the Eleventh Circuit has not adopted the equitable estoppel doctrine in the FMLA context. Gonzales v. Pasco County Bd. of Cnty. Comm'rs, 2013 WL 179948, *6 (M.D. Fla. January 17, 2013) (citing Martin v. Brevard Cnty. Public Schools, 543 F. 3d 1261, 1266) (11th Cir. 2008) (explicitly noting that in regards to the FMLA "we say nothing" as to estoppel)). The Court declines to accept Armbrust's invitation to apply equitable estoppel to the FMLA context in this case.

Even if the Court was inclined to consider Armbrust's equitable estoppel argument, his position would not be well taken. Armbrust argues Ward misrepresented to him that he could return to work on January 16, 2014, however, at that time Armbrust's FMLA leave had already expired. Armbrust would have the Court apply his estoppel argument to his proposed bereavement leave which he claims was from January 13, 2014, up to January 16, 2014. Contrary to Armbrust's position, his FMLA benefits expired on January 9, 2014, and his bereavement leave could not, at that time, qualify as FMLA leave as he had used up his entire twelve (12) week FMLA leave time. Therefore, his FMLA equitable estoppel argument would fail.

Accordingly, it is now

**ORDERED:**

The Defendant, SA-ENC Operator Holdings, LLC's Motion for Summary Judgment (Doc. #29) is **GRANTED in part and DENIED in part.**

(1) The Motion for Summary Judgment as to Count I Interference is **GRANTED**.

Count I is hereby **DISMISSED** with prejudice.

(2) The Motion for Summary Judgment as to Count II Retaliation is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida this 1st day of June, 2015.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record